## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| AP ORANGEVALE, LLC, | ) | Case No. 23-10687 (CTG) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| AP ORANGEVALE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Proc. No. _____ |
| v. | ) | |
| | ) | |
| JAY KERNER, CABLE PARK | ) | |
| PROPERTY OWNER, LLC, | ) | |
| LONGS DRUGSTORES CALIFORNIA, | ) | |
| and CVS CAREMARK CORP., | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

AP Orangevale, LLC (the "Debtor"), by and through its undersigned counsel, alleges for its Complaint herein as follows:

## PROCEDURAL BACKGROUND

1.     On May 29, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.

2.     The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the filing of this Complaint, no trustee, examiner or committee has been appointed in this chapter 11 case.

## THE PARTIES

3.     The Debtor is a limited liability company formed under the laws of the State of Delaware, a debtor in possession and a party to two leases (as more fully described below) relating to real property located at 8861 Greenback Lane, Orangevale, CA.

4.     Defendant Jay Kerner is an individual residing in the State of California.  Mr. Kerner is a member and manager of Defendant Cable Park Property Owner, LLC and is solely responsible for the management of Cable Park Property Owner, LLC.

5.     Defendant Cable Park Property Owner, LLC ("CPPO") is a California limited liability company.  CPPO is the owner of the real property located at 8861 Greenbank Lane, Orangevale, CA.

6.     Defendant Longs Drugstores California, LLC ("Longs") is a business entity organized and existing under the laws of the State of California with a principal place of business at 1 CVS Drive, Woonsocket, RI 02895.

7.     Defendant CVS Caremark Corp. ("CVS" and, together with Longs, Kerner and CPPO, the "Defendants") is a business entity organized and existing under the laws of the State of Delaware with a principal place of business at 1 CVS Drive, Woonsocket, RI 02895.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding as it is related to the administration of the Debtor's estate, the Debtor's interest in its sole asset, and the Defendants' conduct with regard to that asset. Furthermore, this case is related to the Debtor's intention to assume the Ground Lease (as defined below) pursuant to 11 U.S.C. § 365.

9.     Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

10.     This matter seeks a judgment against the Defendants for, *inter alia*, the Defendants'

serial breaches of agreements with the Debtor, Defendants' violations of the automatic stay for continuing those breaches and harming the estate, and Defendants' exercise of control over property of the estate. Further, this matter seeks an order directing the Defendants to turn over property of the Debtor. This matter is a core proceeding pursuant to 28 U.S.C. § 157.

11. Pursuant to Local Bankruptcy Rule 7008-1, Debtor states that it consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## FACTUAL ALLEGATIONS

12. This Complaint seeks relief from serial and ongoing harmful conduct being perpetrated by Defendants against the Debtor for the purpose of achieving the Defendants' aligned economic goals – to rid themselves of the Debtor and render the Debtor insolvent. Documents obtained by the Debtor after the Petition Date, from Court-ordered discovery in the Debtor's bankruptcy case, and open and notorious conduct of the Defendants outside the Bankruptcy Court, show that Defendants are engaged in an ongoing scheme to harm the Debtor, and deny the Debtor (and its affiliates) important income, cause the Debtor to default on its obligations to its lenders, and unfairly lose its interest in a multimillion-dollar ground lease. This scheme includes tacit or explicit commitments by Defendants – in concert – to abuse the legal process and to fund litigation against the Debtor to achieve certain business objectives that Defendants share. The object of the Defendants' scheme is to rid one of the Defendants of a lease that it recently renewed but that now has become costly surplusage to it. Another Defendant is motivated to recapture 31,000 feet of retail space that is leased to the Debtor until 2052 at a rent of approximately $2 per square foot and then to re-lease that space to a new tenant for $14 per square foot or more. By combining forces

and adopting the same false story concerning the Ground Lease, by withholding material documents in litigation, and by abusing the interpleader process to withhold millions of rent dollars from the Debtor and its affiliates and force the Debtor and its affiliates (including the Debtor's debtor-in-possession lender) to spend hundreds of thousands of dollars of legal and other costs, the Defendants hope that the Debtor (and its lender) will become administratively insolvent, and die by a thousand cuts. By working in concert as they have volitionally done to deprive the Debtor of income, and multiply and fund litigation against the Debtor (and its affiliates), the Defendants have caused, and continue to cause the Debtor and the Debtor's estate great harm.

13.     The Debtor, as tenant, has an interest in a ground lease (the "Ground Lease") for certain real property located in Sacramento County commonly known as 8861 Greenback Lane, Orangevale, CA (the "Premises"). The current owner of the Premises, CPPO, is the landlord under the Ground Lease. The Ground Lease expires in July, 2052.

14.     Longs is the subtenant of the Premises under a sublease (the "Tenant Lease") between itself and the Debtor whereby Longs operates or operated a pharmacy in a 31,000 square foot building on the Premises. Pursuant to the Tenant Lease, Longs is to make monthly rental payments to the Debtor in exchange for Longs' occupancy of the Premises. After giving effect to a written extension option notice (the "2020 Exercise Notice") sent by Longs to the Debtor on or about June 30, 2020, the term of the Tenant Lease expires January 1, 2026. *See* **Exhibit A** hereto.

15.     Upon information and belief, in or about 2008, CVS acquired Longs. For purposes of this Complaint, the Debtor hereinafter shall refer to CVS and Longs as, "Longs/CVS."

16.     Under the terms of the Tenant Lease, Longs/CVS owes monthly base rent, taxes, and other amounts for the account of the Debtor. The Tenant Lease requires that Longs/CVS pay

certain of these items directly to third parties on behalf of the Debtor, but they nonetheless constitute "rent" under the Tenant Lease.

17. Longs/CVS is, and at all times since 1999 has been, aware and believed that the term of the Ground Lease was extended to 2052. Longs/CVS is and has been in possession of the option exercise letter dated December 10, 1998 (the "Option Letter") by which the Ground Lease term was extended to 2052. For nearly 25 years, Longs/CVS has acted consistently and in reliance on the validity of the Option Letter, most recently when it sent to the Debtor the 2020 Exercise Notice.

18. In June 2022, for the first time, CPPO took the position that the Ground Lease expired in July 2022. That contention is baseless. In fact, as set forth above, the Ground Lease was extended to 2052 pursuant to options exercised by the then-tenant under the Ground Lease in 1998. That extension was effectuated by the sending of the Option Letter. To dispel any doubt about the termination date and the effectiveness of the Option Letter, the then landlord under the Ground Lease executed an agreement in July 1999 explicitly stating that the termination date of the Ground Lease is in 2052. A copy of the Estoppel Agreement is attached hereto as **Exhibit B**. CPPO has had knowledge of the Estoppel Agreement since before it acquired the Premises.

19. In discovery in the Debtor's bankruptcy case, Defendant CPPO represented – under oath – that it had produced all files related to its acquisition of the Ground Lease, but inexplicably that production did not contain the Estoppel Agreement. That representation, made by Kerner, was, in fact, false. Only in response to an Order entered by the Bankruptcy Court compelling CPPO to produce documents, did CPPO finally produce a document it had purposely withheld. That document, notarized and executed by the then landlord under the Ground Lease, was the

Estoppel Agreement, which amended and supplemented the Ground Lease and indisputably confirmed that the termination date of the Ground Lease is in 2052.

20.     Both Kerner and CPPO were long aware the Estoppel Agreement existed, since before Kerner and CPPO acquired the Premises, but Kerner and CPPO withheld it from the Debtor and the Court in proceedings in the Debtor's chapter 11 case, as well as in proceedings in state court in California, where CPPO had filed an unlawful detainer action against the Debtor.   Both Kerner and CPPO understood the critical importance of the Estoppel Agreement, but nevertheless intentionally withheld production of this document, in an effort to defraud the Debtor out of its valuable leasehold interest and prevent that evidence from being used by the Debtor and seen by the courts.

21.     As set forth above, the Tenant Lease is in full force and effect until at least January 1, 2026.   It was extended to such date in writing by a written option exercise delivered by Longs/CVS on or about June 30, 2020.  *See* **Exhibit A**.  Notwithstanding the fact that the Ground Lease was extended to 2052, that all Defendants believed the Ground Lease was extended to 2052 and acted accordingly at all times prior to June 2022, when CPPO made its baseless and fraudulent assertion in June 2022 that the Ground Lease had expired, Longs/CVS suddenly contended, for the first time, and without justification, that the Tenant Lease was also terminated in 2022.

22.     That contention by Longs/CVS was made contrary to their longstanding conduct and legal agreements and, without justification.  Moreover, on information and belief, Longs/CVS made that contention with the intent to conspire with Kerner and CPPO to defraud the Debtor out of its valuable leasehold interest and thereby escape from the last four years of an expensive lease that had unexpectedly become burdensome due to recent changes in the drugstore business

generally. In furtherance of the conspiracy, Longs/CVS agreed to "support" and fund Kerner's and CPPO's litigation against the Debtor.

23. The Debtor, of course, has always asserted the Ground Lease expires in 2052, and has made repeated demands that the Defendants honor their respective obligations. Since at least June 2022, and notwithstanding the obligations under the Tenant Lease, Longs/CVS has withheld rental payments owed to the Debtor even though the Defendants have no right to withhold rent and have not otherwise sought a determination that rent is not due and owing.

24. Despite disavowing its obligations to the Debtor *after* July 2022, and stopping payments to the Debtor, Longs/CVS remained in possession of the Premises, and in furtherance of their scheme with CPPO and Kerner, made payments directly to Kerner and CPPO – **funds that should have been paid to the Debtor**. During its bankruptcy case, the Debtor obtained documents from Kerner and CPPO in response to the Bankruptcy Court's Order that showed, notwithstanding Longs/CVS' then recent contention that the Tenant Lease expired in July 2022, **Longs/CVS remained in possession of the Premises until February 2023 (and perhaps beyond)**. These documents further show that, after June 2022, Longs/CVS paid Kerner and CPPO an amount not less than $5,500 "per month triple net rent," plus $219,000 as "compensation." Those "compensation" funds, totaling no less than $250,000, were variously mischaracterized by Kerner as "settlement" payments or direct rents that were part of an alleged new lease arrangement under negotiation between CPPO and Longs/CVS – an arrangement that never materialized. In fact, those payments were holdover rent due to the Debtor, but which were instead intentionally withheld from the Debtor and **which were not placed** into the account of the court in the pending Interpleader Action (defined below), despite the fact the these funds would have been subject to

the same bogus claim by Longs/CVS that a third party somehow had a claim to rents due the Debtor.

25.     As of the Petition Date, exclusive of the monies wrongly paid to Kerner and CPPO referred to above, the amount of unpaid rent and other obligations past due from Longs/CVS to the Debtor totaled an amount not less than $688,050.00.

26.     On or about November 9, 2022, Longs/CVS filed a complaint for interpleader in the Superior Court of California, Sacramento under case no. 34-2022-00329641 (the "Interpleader Action") against various defendants, including the Debtor, regarding rental payments that it withheld during the final months of its possession of the premises subject to the Tenant Lease. Despite having paid the Debtor directly for years and having convincing evidence to the contrary in its own files, and having only recently extended the Tenant Lease to 2026, Longs/CVS contended that it was suddenly unsure who was entitled to receive the rent for the Tenant Lease. It is noteworthy that the ostensible basis for the Interpleader Action in the first place was an alleged claim of ownership of the Ground Lease by the holder of a 15-year-old judgment against the parent company of the former owner of the Ground Lease, Philip Kassover, whose claims have already been held to be invalid in this Court.[1] Oddly, however, Longs/CVS's "concern" about possible double rent liability to Kassover did not extend to the $250,000 it paid directly to CPPO and Kerner as "compensation" after it agreed to support the incorrect allegation made by CPPO that the Ground Lease expired in 2022.

27.     Notwithstanding Longs/CVS's professed concern about having possible liability for "duplicative" rent payments to Kassover, as well as the Debtor, it was able to divine a way

---

[1]  Notably, this Court disallowed the claim of GCCR, LLC (an entity that Kassover claims to control) against the Debtor.  *See* Docket No. 205.

forward *without withholding $250,000 of rent* from a landlord (CPPO) with which it had other relationships and intentions, and whose position it shared "and supported" as to the expiration of the Ground Lease being in 2022.

28.     There is more conduct by Longs/CVS and its affiliates that supports the conclusion that Longs/CVS is acting in bad faith and inequitably toward, not just the Debtor, but seven of its affiliated property owners that are landlords of Longs/CVS drugstore properties.  Longs/CVS's actions described below are inextricably linked to the Debtor's matter and are actions being implemented to "starve" the Debtor and certain of its affiliates of rents justly due to them. Longs/CVS is seeking to use that financial pressure, including on the Debtor's debtor-in-possession lender, as leverage to force the Debtor to compromise on its claims against Longs/CVS through the tortious actions of Longs/CVS in combining with the landlord under the Ground Lease to propound the false story that the ground lease ended in 2022.

29.     Longs/CVS stands to benefit financially from a determination that its sublease ended in 2022 and not 2026, the date to which Longs/CVS recently and volitionally extended it in writing.  Being able to avoid the obligations it intentionally undertook only months ago will save Longs/CVS approximately $3 million.  CPPO likewise stands to benefit from its alliance with Longs/CVS on the false premise that the Ground Lease expired in 2022 by terminating a $2 per square foot lease 30 years before its time and re-leasing the same space for a rent that is 700% higher.

30.     Affiliates of the Debtor own and control eleven additional Longs/CVS drug store properties across the United States.  Five of these properties were part of a portfolio of stores that were occupied by Longs/CVS under leases that provided Longs/CVS with a substantial rent "holiday," meaning that no rent was due for a number of months until the "holiday" period expired.

Longs/CVS was required to begin paying rent to the Debtor's affiliates for those stores on February 1, 2024. The total annual amount of rents that are due from the group of five stores is in excess of $1.36 million. The total rents that Longs/CVS is improperly making unavailable to the Debtor's affiliates is in excess of $6.8 million over the 60-month renewal terms of the applicable leases.

31. On or about December 5, 2023, counsel for Longs/CVS sent letters to the Debtor's affiliates stating that Longs/CVS would withhold these rents and interplead them in the same manner as has been arranged for the Debtor if the affiliates could not produce a joint written instruction from Kassover and the affiliates directing Longs/CVS to pay the rents to the affiliates. Copies of these letters are annexed to this Complaint as **Exhibit C**.

32. As has already been determined by this Court, the Kassover claims relating to the Debtor's store were defective and are now time barred. Also, for the reasons herein set forth and for other reasons, it is clear that Longs/CVS knew that the Kassover claims against the Debtor's property and upon which the Interpleader Action was allegedly based were without merit. Obviously, if Longs/CVS believed otherwise, Longs/CVS would never have paid $250,000 of alleged "rent" that is subject to claims by Kassover to CPPO, which it did in 2023. It would have instead placed that money into the same Interpleader Action that it started in order to withhold rent payments from the Debtor.

33. The fact that Longs/CVS paid $250,000 of holdover rent directly to it co-Defendant in this controversy, which rent was subject to the same baseless claims that were wrongly alleged by Longs/CVS to justify interpleading over $700,000 of funds, makes obvious that Longs/CVS's real object in interpleading all these Debtor funds was to make them unavailable to the Debtor to squeeze it and its affiliates financially and **not to protect itself from possible duplicative rent liability**.

34.     As a direct result of the Defendants' conduct, the Debtor has been denied its source of income, has been forced to file for protection under the Bankruptcy Code, and is forced to borrow funds to operate and conduct its bankruptcy case.  Still further, the Debtor's sole source of funds has been harmed by the Defendants' conduct, which in turn, has harmed the Debtor. Meanwhile, Longs/CVS has used funds owed to the Debtor to pay Kerner and CPPO directly, who in turn, have prosecuted litigation against the Debtor on multiple fronts intended to cripple the Debtor's business, and cause the Debtor to default on its obligations with the Debtor's lender.

35.     Notwithstanding actual notice of the Debtor's bankruptcy and the automatic stay imposed by 11 U.S.C. § 362, Defendants have taken coordinated steps to divert funds owed to the Debtor and to direct those funds to Kerner and CPPO, and to inflict financial harm on the Debtor in the ways described herein in order to advance their baseless objectives against the Debtor – even after the Petition Date.

36.     The current base monthly obligation of Longs/CVS under the Tenant Lease is $36,775.00, which does not include Additional Rent, as that term is defined in the Tenant Lease. For the period between the Petition Date and January 1, 2026, the total amount due under the Tenant Lease is at least $3,000,000.00.

37.     Longs/CVS's withholding of the funds due as rent, and payment of funds to Kerner and CPPO is in bad faith, and without legal justification.  In addition, that misconduct not only caused the filing of the Debtor's bankruptcy case, but has caused, and continues to cause harm to the Debtor, including but not limited to the Debtor's ability to perform obligations to its lender, and emerge from bankruptcy.

## COUNT I
## (Turnover of Property Pursuant to 11 U.S.C. § 542 – Kerner and CPPO)

38.     The Debtor repeats and reasserts the allegations of the foregoing paragraphs as if fully set forth herein.

39.     On information and belief, Kerner and CPPO are in possession, custody or control of funds that belong to the Debtor.

40.     The funds are property of the Debtor's estate under Section 541(a) of the Bankruptcy Code. The Debtor is entitled to use the funds under Section 363 of the Bankruptcy Code.

41.     The funds paid by Longs/CVS to Kerner and CPPO are of substantial value, the recovery of which will substantially benefit the Debtor's estate.

42.     Kerner and CPPO have no interest in the funds paid by Longs/CVS that might otherwise require adequate protection under Section 361 of the Bankruptcy Code.

43.     The Debtor is entitled to recovery of the funds and to a complete accounting with respect thereto pursuant to Section 542 of the Bankruptcy Code.

## COUNT II
## (Breach of Contract –Longs/CVS)

44.     The Debtor repeats and reasserts the allegations of the foregoing paragraphs as if fully set forth herein.

45.     The Tenant Lease is a valid and enforceable contract between the Debtor and Longs/CVS.

46.     All the rights of Longs/CVS to the Premises are derived from and premised upon the existence and terms of the Tenant Lease.

47.     The Debtor performed all of its obligations under the Tenant Lease.

48.     Longs/CVS materially breached the Tenant Lease by failing to remit payment of, and withholding the funds due under the Tenant Lease, including the funds that Longs/CVS paid to Kerner and CPPO.

49.     Longs/CVS materially breached the Tenant Lease by paying funds due to the Debtor to Kerner and CPPO, which they intentionally mischaracterized as payments other than rent under the Tenant Lease.

50.     As a direct and proximate result of Defendants' material breach of the Tenant Lease, the Debtor's estate has suffered damages.

51.     Longs/CVS owes the Debtor an amount not less than $3,000,000.00 under the Tenant Lease.

## COUNT III
### (Tortious Interference with Contract – Longs/CVS)

52.     The Debtor repeats and reasserts the allegations of the foregoing paragraphs as if fully set forth herein.

53.     The Ground Lease is a valid and enforceable contract between the Debtor and CPPO.  The Debtor has obligations under the Ground Lease to the owner of the Premises.

54.     Longs/CVS was aware of the existence of the Ground Lease and of the contractual relationship between the Debtor and CPPO.

55.     Longs/CVS has unjustly and intentionally withheld rent owed to the Debtor interfering with the Debtor's ability to make payments under the Ground Lease.

56.     The Defendants' wrongful conduct is interfering with the Debtor's ability to make timely payments under the Ground Lease.

57.     CPPO has alleged that Longs/CVS's vacation of the Premises caused other damages, which CPPO seeks to recover from the Debtor.

58.     The Debtor has been damaged by Longs/CVS's withholding of rent and the subsequent interference with Debtor's leasehold interest in the Ground Lease.

59.     As a direct and proximate result of Longs/CVS's tortious interference with Debtor's contractual relationship evidenced by the Ground Lease, Debtor incurred and will continue to incur substantial damages.

## COUNT IV
### (Tortious Interference with Contract – Kerner and CPPO)

60.     The Debtor repeats and reasserts the allegations of the foregoing paragraphs as if fully set forth herein.

61.     The Tenant Lease is a valid and enforceable contract between the Debtor and Longs/CVS.  Longs/CVS has obligations under the Tenant Lease to the Debtor.

62.     Kerner and CPPO are aware of the existence of the Tenant Lease and of the contractual relationship between the Debtor and Longs/CVS.

63.     Kerner and CPPO have unjustly and intentionally caused Longs/CVS to withhold rent to the Debtor interfering with the Debtor's ability to make payments under the Ground Lease.

64.     Kerner's and CPPO's wrongful conduct is interfering with the Debtor's ability to make timely payments under the Ground Lease.

65.     The Debtor has been damaged by Kerner's and CPPO's conduct, including causing Longs/CVS to withhold rent and subsequently causing Longs/CVS to pay amounts due to the Debtor to Kerner and CPPO.

66.     As a direct and proximate result of Kerner and CPPO's tortious interference with the Tenant Lease, the Debtor incurred and will continue to incur substantial damages.

## COUNT V
### (Civil Conspiracy)

67.     The Debtor repeats and reasserts the allegations of the foregoing paragraphs as if fully set forth herein.

68.     Defendants have agreed amongst themselves and worked together to breach agreements with the Debtor and to deprive the Debtor of income that the Debtor needs to operate.

69.     Defendants are motivated by concurrent and parallel interests.  Kerner and CPPO wish to take back the Premises and terminate the Ground Lease, which is a below-market lease of great value to the Debtor.  Longs/CVS wishes to prematurely exit the Tenant Lease, because the store operated on the Premises was not profitable.

70.     In order to cripple the Debtor, the Defendants have undertaken a scheme whereby the Longs/CVS withheld rent payments due to the Debtor and directed payments to Kerner and CPPO, who used the payments to fund litigation against the Debtor.  On the one hand, the Debtor is deprived of income.  On the other hand, the Debtor is forced to borrow money to litigate and protect its interests, litigation that is funded and orchestrated by the Defendants. To increase the pressure on the Debtor and its affiliates, Longs/CVS has withheld rents from the Debtor's affiliates at other stores without any justification, forcing the affiliates to incur substantial legal and other expenses and depriving them of funds which indirectly support the operations of the Debtor and its efforts to reorganize.

71.     As a result of the Defendants' agreements and scheme, the Debtor has been severely damaged.

## COUNT VI
### (Violation of 11 U.S.C. § 362)

72.     The Debtor repeats and reasserts the allegations of the foregoing paragraphs as if fully set forth herein.

73. The Ground Lease is a valid and enforceable contract between the Debtor and CPPO. The Ground Lease is a leasehold interest that is property of the estate.

74. The Tenant Lease is a valid and enforceable contract between the Debtor and Longs/CVS.

75. Longs/CVS has unjustly and intentionally withheld rent to the Debtor causing the Debtor to be unable to make payments under the Ground Lease.

76. Notwithstanding actual notice of the Petition, Longs/CVS used the Debtor's asset and remained in the Premises in violation of the Tenant Lease, and diverted payments away from the Debtor and to Kerner and CPPO, notwithstanding the Tenant Lease and the automatic stay.

77. Notwithstanding actual notice of the Petition, Kerner and CPPO conspired with Longs/CVS to accept payments that were due the Debtor for Longs/CVS's use of the Premises, in violation of the Tenant Lease, the Debtor's asset. Kerner and CPPO continue to hold those funds.

78. The Defendants have engaged in a pattern of coordinated, wrongful conduct after the Petition Date that is intended to further their efforts to terminate the Ground Lease and divest the Debtor of its asset. This conduct has interfered with the Debtor's ability to receive payments under the Tenant Lease, and make timely payments under the Ground Lease, and has increased the Debtor's liabilities and administrative expenses exponentially.

79. The Defendants are exercising control over property of the estate and are willfully harming the estate in furtherance of their prepetition claims.

WHEREFORE, the Debtor respectfully requests that the Court enter judgment in its favor and against the Defendants:

(a) ordering Defendants to turn over and remit payment of all the funds paid by Longs/CVS to Kerner and CPPO to the Debtor;

(b)     ordering Defendants to provide the Debtor with a complete accounting with respect to the funds paid or received to each other on account of the Premises since June 2022;

(c)     awarding judgment in an amount not less than $3,000,000.00 due to Longs/CVS' breach of contract;

(d)     awarding damages to Debtor due to Defendants' violation 11 U.S.C. § 362;

(e)     awarding damages to Debtor due to Defendants' tortious interference with the Debtor's Ground Lease and Tenant Lease;

(f)     awarding prejudgment and post-judgment interest at the maximum legal rate through the date of payment;

(g)     awarding the Debtor its attorneys' fees and costs incurred in this suit; and

(h)     granting such other and further relief as may be just and proper.

Dated: May 3, 2024                          CROSS & SIMON, LLC
Wilmington, Delaware

                                            */s/ Christopher P. Simon*
                                            Christopher P. Simon (No. 3697)
                                            Kevin S. Mann (No. 4576)
                                            1105 North Market Street, Suite 901
                                            Wilmington, Delaware 19801
                                            Telephone: (302) 777-4200
                                            csimon@crosslaw.com
                                            kmann@crosslaw.com

                                            *Counsel to the Debtor*